RUTLEDGE *v.* UNITED STATES

No. 94–8769.   Argued November 27, 1995—Decided March 27, 1996

STEVENS, J., delivered the opinion for a unanimous Court.

*Barry Levenstam* argued the cause for petitioner. With him on the briefs were *Jerold S. Solovy, Avidan J. Stern,* and *Jacob I. Corré.*

*James A. Feldman* argued the cause for the United States. With him on the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben,* and *Richard A. Friedman.*

JUSTICE STEVENS delivered the opinion of the Court.

A jury found petitioner guilty of participating in a conspiracy to distribute controlled substances in violation of 84 Stat. 1265, as amended, 21 U. S. C. § 846, and of conducting a continuing criminal enterprise (CCE) in violation of § 848. The "in concert" element of his CCE offense was based on the same agreement as the § 846 conspiracy. The question presented is whether it was therefore improper for the District Court to sentence him to concurrent life sentences on the two counts.

I

Petitioner organized and supervised a criminal enterprise that distributed cocaine in Warren County, Illinois, from 1988 until December 1990, when he was arrested by federal agents. He was charged with several offenses, of which only Count One, the CCE charge, and Count Two, the conspiracy charge, are relevant to the issue before us.

Count One alleged that during the period between early 1988 and late 1990, petitioner violated § 848[1] by engaging in

---

[1] Section 848(c) provides:

"(c) 'Continuing criminal enterprise' defined

"For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

a CCE that consisted of a series of unlawful acts involving the distribution of cocaine.[2] The count alleged that these actions were undertaken "in concert with at least five (5) other persons," that petitioner supervised those other persons, and that he obtained substantial income from the continuing series of violations. App. 2–3.

Count Two separately alleged that during the same period, petitioner violated 21 U. S. C. § 846[3] by conspiring with four codefendants and others to engage in the unlawful distribution of cocaine. The count alleged that each of the conspirators had furthered the conspiracy by performing an overt act involving the delivery, purchase, or distribution of cocaine. App. 3–5.

After a 9-day trial, a jury found petitioner guilty on all counts. The trial court entered judgment of conviction on both Count One and Count Two and imposed a sentence of life imprisonment without possible release on each count, the sentences to be served concurrently. Id., at 8–10. Pursuant to 18 U. S. C. § 3013, petitioner was also ordered to pay a special assessment of $50 on each count.

---

"(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

"(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

"(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

"(B) from which such person obtains substantial income or resources." 21 U. S. C. § 848(c).

[2] The alleged unlawful acts included a series of cocaine transactions in violation of § 841(a) and the same conspiracy in violation of § 846 that was charged in Count Two.

[3] "§ 846. Attempt and conspiracy

"Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U. S. C. § 846.

On appeal, petitioner contended in a *pro se* supplemental brief that even though the life sentences were concurrent, entering both convictions and sentences impermissibly punished him twice for the same offense. The Court of Appeals for the Seventh Circuit accepted the premise of his argument, namely, that the conspiracy charge was a lesser included offense of the CCE charge. 40 F. 3d 879, 886 (1994). The Court of Appeals nonetheless affirmed his convictions and sentences. Relying on its earlier decision in *United States* v. *Bond,* 847 F. 2d 1233, 1238 (1988), and our decision in *Jeffers* v. *United States,* 432 U. S. 137 (1977), it held that convictions and concurrent sentences may be imposed for conspiracy and CCE, "provided the cumulative punishment does not exceed the maximum under the CCE act." 40 F. 3d, at 886.

The decision of the Seventh Circuit is at odds with the practice of other Circuits. Most federal courts that have confronted the question hold that only one judgment should be entered when a defendant is found guilty on both a CCE count and a conspiracy count based on the same agreements.[4] The Second and Third Circuits have adopted an intermediate position, allowing judgment to be entered on both counts but permitting only one sentence rather than the concurrent sen-

___

[4] See, *e. g., United States* v. *Rivera-Martinez,* 931 F. 2d 148, 153 (CA1), cert. denied, 502 U. S. 862 (1991); *United States* v. *Butler,* 885 F. 2d 195, 202 (CA4 1989); *United States* v. *Neal,* 27 F. 3d 1035, 1054 (CA5 1994), cert. denied, 513 U. S. 1179 (1995); *United States* v. *Paulino,* 935 F. 2d 739, 751 (CA6 1991), cert. denied, 502 U. S. 1036 (1992); *United States* v. *Possick,* 849 F. 2d 332, 341 (CA8 1988); *United States* v. *Hernandez-Escarsega,* 886 F. 2d 1560, 1582 (CA9 1989), cert. denied, 497 U. S. 1003 (1990); *United States* v. *Stallings,* 810 F. 2d 973, 976 (CA10 1989); *United States* v. *Cruz,* 805 F. 2d 1464, 1479 (CA11 1986), cert. denied, 481 U. S. 1006 (1987); *United States* v. *Anderson,* 39 F. 3d 331, 357 (CADC 1994), rev'd on other grounds, 59 F. 3d 1323 (CADC 1995) (en banc).

tences allowed in the Seventh Circuit.[5] We granted certiorari to resolve the conflict. 515 U. S. 1157 (1995).

## II

Courts may not "prescrib[e] greater punishment than the legislature intended." *Missouri* v. *Hunter,* 459 U. S. 359, 366 (1983); *Brown* v. *Ohio,* 432 U. S. 161, 165 (1977). In accord with principles rooted in common law and constitutional jurisprudence, see *Ex parte Lange,* 18 Wall. 163, 168–170 (1874), we presume that "where two statutory provisions proscribe the 'same offense,'" a legislature does not intend to impose two punishments for that offense. *Whalen* v. *United States,* 445 U. S. 684, 691–692 (1980); *Ball* v. *United States,* 470 U. S. 856, 861 (1985).

For over half a century we have determined whether a defendant has been punished twice for the "same offense" by applying the rule set forth in *Blockburger* v. *United States,* 284 U. S. 299, 304 (1932). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Ibid.* In subsequent applications of the test, we have often concluded that two different statutes define the "same offense," typically because one is a lesser included offense of the other.[6]

---

[5] *United States* v. *Aiello,* 771 F. 2d 621, 634 (CA2 1985); *United States* v. *Fernandez,* 916 F. 2d 125, 128–129 (CA3 1990), cert. denied, 500 U. S. 948 (1991).

[6] See, *e. g., Ball* v. *United States,* 470 U. S. 856, 861–864 (1985) (concluding that multiple prosecutions were barred because statutes directed at "receipt" and "possession" of a firearm amounted to the "same offense," in that proof of receipt *"necessarily"* included proof of possession); *Whalen* v. *United States,* 445 U. S. 684, 691–695 (1980) (concluding that two punishments could not be imposed because rape and felony murder predicated on the rape were the "same offense"); *Brown* v. *Ohio,* 432 U. S. 161, 167–168 (1977) (in multiple proceedings context, applying *Blockburger*

In this case it is perfectly clear that the CCE offense requires proof of a number of elements that need not be established in a conspiracy case.[7] The *Blockburger* test requires us to consider whether the converse is also true—whether the § 846 conspiracy offense requires proof of any element that is not a part of the CCE offense. That question could be answered affirmatively only by assuming that while the § 846 conspiracy requires proof of an actual agreement among the parties, the "in concert" element of the CCE offense might be satisfied by something less.

The Government advanced this precise argument in *Jeffers* v. *United States*, 432 U. S. 137 (1977),[8] but it managed to persuade only one Justice. *Id.*, at 158 (White, J., concurring). The position was rejected, to varying degrees, by the

---

v. *United States*, 284 U. S. 299 (1932), to confirm state-court conclusion that offense of "joyriding" was a lesser included offense of auto theft).

[7] The defendant must, for example, commit a series of substantive violations, be a leader of the criminal enterprise, and derive substantial income from it. The Government need not prove any of those elements to establish a conspiracy in violation of § 846. Even the "in concert" element of the CCE offense is broader than any requirement in § 846 because it requires at least five participants, while a conspiracy requires only two.

[8] In *Jeffers*, we considered whether the Government could prosecute the defendant under § 848 even though he had previously been convicted of § 846 conspiracy on the basis of the same agreements. The Government argued that the multiple prosecution was permissible because the crimes were not the "same offense." "The Government's position is premised on its contention that agreement is not an essential element of the § 848 offense, despite the presence in § 848(b)(2)(A) of the phrase 'in concert with.' If five 'innocent dupes' each separately acted 'in concert with' the ringleader of the continuing criminal enterprise, the Government asserts, the statutory requirement would be satisfied. Brief for United States 23." 432 U. S., at 147. The Government relied on *Iannelli* v. *United States*, 420 U. S. 770 (1975), in which we construed 18 U. S. C. § 1955 as not requiring proof of conspiracy. As Justice Blackmun pointed out, however, the language of § 1955 was significantly different from § 848 in that it omitted the words "in concert" and left open "the possibility that the five persons 'involved' in the gambling operation might not be acting together." 432 U. S., at 147–148.

other eight. The four dissenters adopted, without comment, the proposition that conspiracy was a lesser included offense of CCE. See *id.*, at 158, 159, n. 5. The remaining Justices joined Justice Blackmun's plurality opinion which, while declining to hold that conspiracy was a lesser included offense,[9] nonetheless explained why the Government's argument was inconsistent with the statute's text, with the way the words "in concert" have been used in other statutes, and with the legislative history of this statute.[10] Based on its understanding of the "more likely" interpretation of § 848, the plurality assumed, *arguendo*, "that § 848 does require proof of

---

[9] The plurality did not need to hold that conspiracy was a lesser included offense because it found that even if it was, the petitioner waived whatever right he may have had to object to the second prosecution under § 848 when he opposed the Government's motion, brought before the first trial, to consolidate the proceedings. *Id.*, at 149–150, 153–154.

[10] The language of § 848 "restricts the definition of the crime to a continuing series of violations undertaken by the accused 'in concert with five or more other persons.'" *Id.*, at 148. As a result, "a conviction [under § 848] would be impossible unless concerted activity were present. . . . Even if § 848 were read to require individual agreements between the leader . . . and each of the other five necessary participants, enough would be shown to prove a conspiracy." *Ibid.*

Furthermore, "[w]hen the phrase 'in concert' has been used in other statutes, it has generally connoted cooperative action and agreement. . . . This suggests that Congress intended the same words to have the same meaning in § 848. . . . Since the word 'concert' commonly signifies agreement of two or more persons in a common plan or enterprise, a clearly articulated statement from Congress to the contrary would be necessary before that meaning should be abandoned." *Id.*, at 149, n. 14 (citations omitted); see 3 Oxford English Dictionary 658 (2d ed. 1989) (defining "concert" as "[a]greement of two or more persons or parties in a plan, design, or enterprise; union formed by such mutual agreement"; "esp[ecially] in phrase *in concert*"); Webster's Third New International Dictionary 470 (1981) (defining "concert" as "agreement in a design or plan: union formed by mutual communication of opinions and views: accordance in a scheme"). Thus, "[i]n the absence of any indication from the legislative history or elsewhere to the contrary, the far more likely explanation is that Congress intended the word 'concert' to have its common meaning of agreement in a design or plan." *Jeffers*, 432 U. S., at 148–149.

an agreement among the persons involved in the continuing criminal enterprise. So construed, § 846 is a lesser included offense of § 848, because § 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements." *Id.*, at 149–150.

In the years since *Jeffers* was decided, the Courts of Appeals have also consistently rejected the Government's interpretation of the "in concert" language of § 848; they have concluded, without exception, that conspiracy is a lesser included offense of CCE.[11] We think it is appropriate now to resolve the point definitively: For the reasons set forth in *Jeffers*, and particularly because the plain meaning of the phrase "in concert" signifies mutual agreement in a common plan or enterprise, we hold that this element of the CCE offense requires proof of a conspiracy that would also violate § 846. Because § 846 does not require proof of any fact that is not also a part of the CCE offense, a straightforward application of the *Blockburger* test leads to the conclusion that conspiracy as defined in § 846 does not define a different offense from the CCE offense defined in § 848. Furthermore, since the latter offense is the more serious of the two, and because only one of its elements is necessary to prove a § 846 conspiracy, it is appropriate to characterize § 846 as a lesser included offense of § 848.[12]

---

[11] See, *e. g., Rivera-Martinez*, 931 F. 2d, at 152 (CA1); *Aiello*, 771 F. 2d, at 633 (CA2); *Neal*, 27 F. 3d, at 1054 (CA5); *United States* v. *Chambers*, 944 F. 2d 1253, 1268 (CA6 1991), cert. denied, 502 U. S. 1112, *sub nom. Lucas* v. *United States*, 503 U. S. 989 (1992); 40 F. 3d 879, 886 (CA7 1994) (case below); *Possick*, 849 F. 2d, at 341 (CA8); *Hernandez-Escarsega*, 886 F. 2d, at 1582 (CA9); *Stallings*, 810 F. 2d, at 975 (CA10); *United States* v. *Graziano*, 710 F. 2d 691, 699 (CA11 1983).

[12] *Garrett* v. *United States*, 471 U. S. 773, 794–795 (1985), is not to the contrary. There, we affirmed the defendant's prosecution for a CCE violation even though he had previously pleaded guilty to a predicate crime of importing marijuana. *Ibid.* That holding, however, merely adhered to our understanding that legislatures have traditionally perceived a quali-

## III

The Government contends that even if conspiracy is a lesser included offense of CCE, the resulting presumption against multiple punishments does not invalidate either of petitioner's convictions. The second conviction, the Government first argues, may not amount to a punishment at all.

We begin by noting that 18 U. S. C. § 3013 requires a federal district court to impose a $50 special assessment for every conviction, and that such an assessment was imposed on both convictions in this case. As long as § 3013 stands, a second conviction will amount to a second punishment. Cf. *Ray* v. *United States*, 481 U. S. 736, 737 (1987) *(per curiam)* (presence of $50 assessment precludes application of "concurrent sentence doctrine"). The Government urges us not to rely on the assessment, however, pointing out that petitioner did not challenge it below, and noting that the question presented "presupposes" fully concurrent sentences. Brief for United States 7, n. 1.

If we ignore the assessment as the Government requests, the force of its argument would nonetheless be limited by our decision in *Ball* v. *United States*, 470 U. S. 856 (1985). There, we concluded that Congress did not intend to allow punishment for both illegally "receiving" and illegally "possessing" a firearm. *Id.*, at 861–864. In light of that conclusion, we held that "the only remedy consistent with the con-

---

tative difference between conspiracy-like crimes and the substantive offenses upon which they are predicated. See, *e. g., United States* v. *Felix*, 503 U. S. 378, 389–390 (1992) (allowing prosecution for conspiracy after petitioner was convicted of underlying substantive offense, and citing *Garrett* as a similar case). No such difference is present here. In contrast to the crimes involved in *Garrett*, this case involves *two* conspiracy-like offenses directed at largely identical conduct. *Jeffers* v. *United States*, 432 U. S., at 157; *Garrett*, 471 U. S., at 794 ("[T]he plurality [in *Jeffers*] reasonably concluded that the dangers posed by a conspiracy and a CCE were similar and thus there would be little purpose in cumulating the penalties").

gressional intent is for the District Court . . . to exercise its discretion to vacate one of the underlying convictions" as well as the concurrent sentence based upon it. *Id.*, at 864. We explained further:

> "The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may delay the defendant's eligibility for parole or result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. See *Benton* v. *Maryland*, 395 U. S. 784, 790–791 (1969); *Sibron* v. *New York*, 392 U. S. 40, 54–56 (1968). Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment." *Id.*, at 864–865.

Under *Ball*, the collateral consequences of a second conviction make it as presumptively impermissible to impose as it would be to impose any other unauthorized cumulative sentence.

The Government suggests, however, that petitioner will never be exposed to collateral consequences like those described in *Ball* because he is subject to multiple life sentences without possibility of release. We need not conclusively resolve the matter, for there is no doubt that the second conviction carried with it, at very least, a $50 assessment. Although petitioner did not challenge the assessment below, 18 U. S. C. § 3013 required the District Court to impose it, and the assessment was therefore as much a collateral consequence of the conspiracy conviction as the con-

sequences recognized by *Ball* would be. As a result, the conviction amounts to cumulative punishment not authorized by Congress.

## IV

The Government further argues that even if the second conviction amounts to punishment, the presumption against allowing multiple punishments for the same crime may be overcome if Congress clearly indicates that it intended to allow courts to impose them. *Hunter*, 459 U. S., at 366 (citing *Whalen*, 445 U. S., at 691–692); *Garrett* v. *United States*, 471 U. S. 773, 779 (1985) (allowing multiple punishment in light of Congress' "plainly expressed" view). The Government submits that such clear intent can be found here.

The Government finds support for its position in this Court's judgment in *Jeffers* because that judgment allowed convictions under both §§ 846 and 848 to stand. Those convictions, however, had been entered in separate trials and our review only addressed the conviction under § 848. The Court affirmed that conviction not because anyone on the Court suggested that Congress had intended to authorize dual convictions for the same offense,[13] but rather because the four-Justice plurality decided that Jeffers had waived any right to object to Jeffers' prosecution for that conviction, see *Jeffers*, 432 U. S., at 152–154, and because Justice White believed that the two prosecutions were for different offenses.

The sole ground for Justice White's critical fifth vote to affirm the judgment was his belief, set forth in a single short paragraph, that conspiracy was not a lesser included offense

---

[13] Indeed, the parties insisted that the case did not involve multiple punishment concerns, *Jeffers*, 432 U. S., at 154, and n. 23, and the Government did not contend that Congress intended to authorize the imposition of dual punishments. Because neither the Court nor the parties addressed the issue, *Jeffers* is a singularly unlikely source for a holding that Congress clearly authorized multiple convictions. Cf. *United States* v. *L. A. Tucker Truck Lines, Inc.*, 344 U. S. 33, 38 (1952).

of CCE. *Id.*, at 158 (opinion concurring in judgment in part and dissenting in part). In Part II of this opinion we have rejected that view. Accordingly, even if we could infer that the plurality had silently reached the rather bizarre conclusion that Congress intended to allow dual convictions but to preclude other multiple punishments, only four Justices would have supported it, with four others explicitly disagreeing. As to this issue, then, the judgment amounts at best to nothing more than an unexplained affirmance by an equally divided court—a judgment not entitled to precedential weight no matter what reasoning may have supported it. See *Neil* v. *Biggers*, 409 U. S. 188, 192 (1972). The more important message conveyed by *Jeffers* is found not in the bare judgment, but in the plurality's conclusion, joined by the four dissenters, that CCE and conspiracy are insufficiently distinct to justify a finding that Congress intended to allow punishments for both when they rest on the same activity.[14]

---

[14] The Government suggests that convictions are authorized for both §§ 846 and 848 because they are different sections of the United States Code. Brief for United States 16. This does not rise to the level of the clear statement necessary for us to conclude that despite the identity of the statutory elements, Congress intended to allow multiple punishments. After all, we concluded in *Ball* that the statutes at issue did not authorize separate convictions, and they were even more distant in the Code. See 470 U. S., at 863–864 (discussing 18 U. S. C. § 922(h) and 18 U. S. C. App. § 1202(a) (1984)). If anything, the proximity of §§ 846 and 848 indicates that Congress understood them to be directed to similar, rather than separate, evils. Cf. *Albernaz* v. *United States*, 450 U. S. 333, 343 (1981).

The Government further discerns congressional intent to allow multiple punishment from "significant differences" between *Ball* and this case. Brief for United States 19–24. None of its arguments, however, demonstrates that Congress "specially authorized" convictions for both the greater and lesser included offenses we address today. *Whalen*, 445 U. S., at 693. The Government suggests, for example, that the statutes in *Ball* were directed at virtually identical activity, while CCE and conspiracy are not. As we have already concluded, however, every proof of a CCE will demonstrate a conspiracy based on the same facts. That overlap is enough to conclude, absent more, that Congress did not intend to allow punishments for both.

## V

'Finally, the Government argues that Congress must have intended to allow multiple convictions because doing so would provide a "backup" conviction, preventing a defendant who later successfully challenges his greater offense from escaping punishment altogether—even if the basis for the reversal does not affect his conviction under the lesser. Brief for United States 20–22. We find the argument unpersuasive, for there is no reason why this pair of greater and lesser offenses should present any novel problem beyond that posed by any other greater and lesser included offenses, for which the courts have already developed rules to avoid the perceived danger.

In *Tinder* v. *United States*, 345 U. S. 565, 570 (1953), the defendant had been convicted of theft from a mailbox and improperly sentenced to prison for more than one year even though the evidence only supported a misdemeanor conviction. Exercising our "power to do justice as the case requires" pursuant to 28 U. S. C. § 2106, we ordered the District Court to correct the sentence without vacating the underlying conviction. Relying on *Tinder* and the practice in "state courts, including courts governed by statutes virtually the same as Section 2106," the Court of Appeals for the District of Columbia Circuit later decided that its "power to modify erroneous judgments authorizes reduction to a lesser included offense where the evidence is insufficient to support an element of the [greater] offense stated in the verdict." *Austin* v. *United States*, 382 F. 2d 129, 140, 141–143 (1967).[15]

---

[15] The Court of Appeals used this same power in *Allison* v. *United States*, 409 F. 2d 445 (CADC 1969), but noted: "[T]he circumstances in which such authority may be exercised are limited. It must be clear (1) that the evidence adduced at trial fails to support one or more elements of the crime of which appellant was convicted, (2) that such evidence sufficiently sustains all the elements of another offense, (3) that the latter is a lesser included offense of the former, and (4) that no undue prejudice will result to the accused." *Id.*, at 450–451.

Consistent with the views expressed by the District of Columbia Circuit, federal appellate courts appear to have uniformly concluded that they may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense. See 8A J. Moore, Federal Practice ¶ 31.03[5], and n. 54 (2d ed. 1995); *United States* v. *Ward,* 37 F. 3d 243, 251 (CA6 1994) (after finding insufficient evidence to support CCE count, Court of Appeals vacated CCE conviction and sentence and remanded for entry of conspiracy conviction, which District Court had previously vacated as lesser included offense of CCE), cert. denied, 514 U. S. 1030 (1995); *United States* v. *Silvers,* 888 F. Supp. 1289, 1306–1309 (ND Md. 1995) (reinstating conspiracy conviction previously vacated after granting motion for new trial on CCE conviction). This Court has noted the use of such a practice with approval. *Morris* v. *Mathews,* 475 U. S. 237, 246–247 (1986) (approving process of reducing erroneous greater offense to lesser included offense as long as the defendant is not able to demonstrate that "but for the improper inclusion of the [erroneous] charge, the result of the proceeding probably would have been different"). See also *Jones* v. *Thomas,* 491 U. S. 376, 384–385, n. 3 (1989) (citing *Morris*).

There is no need for us now to consider the precise limits on the appellate courts' power to substitute a conviction on a lesser offense for an erroneous conviction of a greater offense.[16] We need only note that the concern motivating the Government in asking us to endorse either the Seventh Circuit's practice of entering concurrent sentences on CCE and conspiracy counts, or the Second Circuit's practice of enter-

---

[16] Indeed, because of our holding today, problems like the one presented in this case are unlikely to arise in the future. A jury is generally instructed not to return a verdict on a lesser included offense once it has found the defendant guilty of the greater offense. See, *e. g.,* Seventh Circuit Pattern Criminal Jury Instruction 2.03, in 1 L. Sand, J. Siffert, W. Loughlin, & S. Reiss, Modern Federal Jury Instructions, p. 7–7 (1991).

ing concurrent judgments, is no different from the problem that arises whenever a defendant is tried for greater and lesser offenses in the same proceeding. In such instances, neither legislatures nor courts have found it necessary to impose multiple convictions, and we see no reason why Congress, faced with the same problem, would consider it necessary to deviate from the traditional rule.[17]

## VI

A guilty verdict on a § 848 charge necessarily includes a finding that the defendant also participated in a conspiracy violative of § 846; conspiracy is therefore a lesser included offense of CCE. Because the Government's arguments have not persuaded us otherwise, we adhere to the presumption that Congress intended to authorize only one punishment. Accordingly, "[o]ne of [petitioner's] convictions, as well as its concurrent sentence, is unauthorized punishment for a separate offense" and must be vacated. *Ball*, 470 U. S., at 864.

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[17] In certain circumstances, it may be that the Government will investigate and prosecute an individual for one or more § 846 conspiracies without being aware of facts that would justify charging a defendant with a violation of § 848 as well. Moreover, a lesser included § 846 conspiracy may not always be coterminous with the larger CCE. Because neither instance is true here, we need not explore the consequences of our holding today for purposes of the successive prosecution strand of the Double Jeopardy Clause, see *Diaz* v. *United States,* 223 U. S. 442, 448–449 (1912); *Brown* v. *Ohio,* 432 U. S., at 169, n. 7; see also *Garrett,* 471 U. S., at 786–793, nor need we address how prior convictions for lesser included § 846 offenses should be handled for purposes of entering judgment if the later § 848 conviction is obtained but then set aside.