F I L E D
**United States Court of Appeals
Tenth Circuit**

**April 10, 2006**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CLIFTON EUGENE BILLY
LLOYD BAKER, a/k/a "Bo" Baker,

Defendant-Appellant.

No. 05-7052

(D.C. No. CR-04-99-01-P)

(E. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **HENRY, BRISCOE,** and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is, therefore,

ordered submitted without oral argument.

Defendant Clifton Baker pled guilty to eight criminal counts arising out of his

participation in a bank robbery and was sentenced to a total term of imprisonment of 264

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

months. Baker now appeals, arguing (1) two of his firearms convictions are multiplicitous, (2) law enforcement agents illegally seized a pistol from his motorcycle, and (3) the district court violated the terms of the plea agreement and committed constitutional error in determining his sentence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

At approximately 10:55 a.m. on July 1, 2004, a white female wearing a black hood entered the International Bank of Commerce in Ardmore, Oklahoma, approached a teller station, and, displaying a semi-automatic pistol, asked for all of the teller's money. The teller complied, placing approximately $5,062 in cash into a black tote bag supplied by the robber. The robber then left the bank.

Based upon a tip from an inmate at the Marshall County (Oklahoma) Jail, Federal Bureau of Investigation (FBI) agents focused their investigative efforts on an Oakland, Oklahoma resident named Cynthia Marie Baxter. Upon questioning by FBI agents, Baxter admitted that she was the robber. Baxter also told the FBI agents that she committed the robbery with an individual named Clifton Eugene Billy Lloyd Baker, who she had met a few days prior to the robbery. According to Baxter, she and Baker were driving around downtown Ardmore in Baker's truck when they decided to rob the bank. Baxter stated that Baker provided her with the pistol, dropped her off at the bank prior to the robbery, and picked her up afterwards. Baxter indicated that Baker kept most of the money taken from the bank.

-2-

On July 13, 2004, FBI agents located and detained Baker outside of a gaming center in Madill, Oklahoma. One of the agents observed a back strap and hammer of a pistol laying under the seat of Baker's motorcycle in plain view. The pistol was subsequently confirmed to be stolen and matched the description of the pistol used by Baxter during the bank robbery.

On July 19, 2004, Baker and Baxter were charged by criminal complaint in connection with the bank robbery. Baker and Baxter were subsequently indicted by a federal grand jury on nine criminal counts. Baker and Baxter were charged in Count 1 with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, in Count 2 with armed bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d) and 2, and in Count 3 with possession of a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Count 4 of the indictment charged Baxter with being a felon in possession of a firearm affecting commerce in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) and (2). Counts 5 and 6 charged Baker with being a felon in possession of a firearm affecting commerce in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1) and (2). Count 7 charged Baker with possession of a stolen firearm in violation of 18 U.S.C. §§ 922(j) and 924(a)(2). Counts 8 and 9 charged Baker with attempting to obstruct or influence an official proceeding in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

On November 8, 2004, Baker filed a trial brief arguing that, at the time of his initial detention on July 13, 2004, FBI agents improperly recovered the pistol by removing the seat of his motorcycle. The district court construed Baker's motion as a

motion to suppress, ordered the government to respond to the motion, and set a hearing on the motion for November 15, 2004.

The scheduled hearing on Baker's motion never took place, however, because Baker decided to plead guilty to all of the charges against him. Although there was no written plea agreement, the government did agree "to make motion to the Court for a third point for acceptance of responsibility in light of [Baker's] change of plea . . . ." ROA, Supp. Vol. I, at 20. During the change of plea hearing, the government stated, without objection from Baker or his counsel, that Baker's guilty plea rendered moot his motion to suppress, and that Baker "[wa]s conceding that motion." Id. The district court's docket sheet entry subsequently reflected that, during the hearing, Baker "advised the court [he] [wa]s conceding the motion to suppress since he [wa]s pleading." Dist. Ct. Docket Sheet at 16.

On April 12, 2005, the district court sentenced Baker to the following terms of imprisonment: 60 months on Count 1; 151 months on Count 2; 84 months on Count 3; 180 months each on Counts 5 and 6; 120 months on Count 7; and 151 months each on Counts 8 and 9. All of these terms of imprisonment were ordered to be served concurrently, with the exception of the 84 month sentence on Count 3, which was ordered to run consecutively to the other sentences.

II.

*Multiplicitous firearms charges*

Baker contends that two of the charges in the superseding indictment, Counts 5

and 6, "cover the same activity" and are therefore "improper and multiplicitous . . . ." Aplt. Br. at 7. We "ordinarily review claims of multiplicity de novo, but where," as here, "a defendant fails to raise the issue in a pre-trial motion," we "review only for plain error." United States v. Graham, 305 F.3d 1094, 1100 (10th Cir. 2002) (internal citations and quotation marks omitted). "Under the plain error standard," Baker "must show clear or obvious error that affected his substantial rights and seriously affected the integrity of the judicial proceedings." Id. (internal quotation marks omitted).

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997). Although "multiplicity is not fatal to an indictment," multiplicitous counts are considered "improper because they allow multiple punishments for a single criminal offense." United States v. Jenkins, 313 F.3d 549, 557 (10th Cir. 2002). Tenth Circuit "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." United States v. Morris, 247 F.3d 1080, 1083 n.2 (10th Cir. 2001).

The test for multiplicity "is whether the individual acts [alleged in the counts at issue] are prohibited, or the course of [conduct] which they constitute." Graham, 305 F.3d at 1100 (internal quotation marks omitted). "If the former, then each act is punishable separately. If the latter, there can be but one penalty." Id. (internal quotation marks omitted). Where multiplicitous convictions are found, "the only remedy . . . is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it . . . ." Rutledge v. United States, 517 U.S. 292, 301-02 (1996).

-5-

Here, Counts 5 and 6 of the superseding indictment charged Baker with being a felon in possession of a firearm affecting commerce in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1), and 2. More specifically, Count 5 alleged that Baker possessed a handgun on July 1, 2004 (the date of the bank robbery), and Count 6 alleged that Baker possessed the same handgun on July 13, 2004 (the date he was detained and then arrested in connection with the bank robbery).

Generally speaking, "Congress intended the crime of possession to refer to a course of conduct rather than individual acts of dominion . . . ." United States v. Jones, 403 F.3d 604, 605 (8th Cir. 2005); see United States v. Fleischli, 305 F.3d 643, 658 (7th Cir. 2002) ("Possession of a firearm is a continuing offense which ceases only when the possession stops."); United States v. Finley, 245 F.3d 199, 207 (2d Cir. 2001) (holding that possession of shotgun is a continuing offense). Thus, "the continuous possession of the same firearm constitutes a single offense." Jones, 403 F.3d at 604. There is, however, an important exception to this rule. "A felon may be charged and convicted on two counts of possessing the same firearm if he first possesses a weapon, he is aware that his possession is interrupted, and he thereafter reacquires possession of the weapon himself." Id. at 606 (internal quotation marks omitted).

A review of the record on appeal suggests that this exception is applicable in Baker's case. More specifically, the record indicates that Baker was in possession of a stolen handgun on the morning of July 1, 2004, and provided that handgun to Baxter in order for her to commit the bank robbery. The record further indicates that, following

Baxter's commission of the bank robbery, Baker reacquired possession of the handgun and, presumably, maintained continuous possession thereof until his detention and arrest on July 13, 2004. Thus, we conclude he was reasonably charged with, and convicted of, two separate counts of being a felon in possession of the same handgun. In other words, we conclude the two felon-in-possession counts were not multiplicitous, and thus there was no plain error.

*Illegal seizure of handgun*

Baker contends that FBI agents violated his Fourth Amendment rights when, on July 13, 2004, they removed the seat of his motorcycle and recovered a handgun that subsequently formed the basis for several of the charges against him. As noted by the government, however, the record on appeal clearly establishes that Baker waived his Fourth Amendment challenge at the time he entered his guilty plea. More specifically, as noted above, the entry of Baker's guilty plea was not conditioned on preservation of his Fourth Amendment challenge to the seizure of the handgun. Instead, Baker pled guilty to all charges against him prior to resolution of his motion to suppress, and he and his counsel effectively acknowledged that the entry of his plea rendered moot his pending motion to suppress. See United States v. Salazar, 323 F.3d 852, 857 (10th Cir. 2003) (concluding that defendant's "unconditional guilty plea effectively waived any challenge to the legality of the wiretaps."). Thus, the issue is not properly before us on appeal.

*Sentencing issues*

Baker contends "he was improperly sentenced under the Federal Sentencing

Guidelines." Aplt. Br. at 9. Although his arguments are not entirely clear, Baker "objects to the fact he [wa]s exposed [to] greater scrutiny and stricter sentencing based on previous criminal conduct as well as other factors in his personal background contained in the presentence report . . . ." Id. Baker also asserts "it was part of the plea agreement that enhancements would not be used and he would not be charged as an armed career criminal for purposes of guideline computations." Id. at 15.

Addressing Baker's arguments in reverse order, a review of the transcript of the change of plea hearing indicates there was no written plea agreement between Baker and the government. Nor were there any oral promises by the government or the district court that sentencing enhancements would not be applied in calculating Baker's offense level, criminal history, and guideline range. To the contrary, the government, at the district court's request, estimated (before Baker officially entered his plea) that under the sentencing guidelines, Baker's "criminal history level [would] be a six," that Baker would be classified as "a career criminal offender," and that his likely guideline sentencing range would "be 188 to 235 months on the counts with the exception of count three, which w[ould] be seven years consecutive." ROA, Supp. Vol I, at 14. And, notably, Baker's counsel agreed with the government's estimate. Id. at 15.

A review of the record further establishes, beyond dispute, that the district court did not commit constitutional Booker error in sentencing Baker.[1] Most significantly, the district court, at the time of sentencing, acknowledged the decision in Booker and noted

_____

[1] See United States v. Booker, 125 S.Ct. 738 (2005).

-8-

that, in light of that decision, it was "not bound by the sentencing guideline calculations contained within the presentence report." ROA, Vol. II, at 10. Moreover, none of the sentencing enhancements applied by the district court were based upon factual findings made by the district court. After determining Baker's base offense level to be 20 (a determination Baker does not challenge), the district court applied three enhancements: (1) a 2-level enhancement because the offense involved a stolen firearm; (2) a 4-level enhancement because the defendant used or possessed a firearm in connection with the bank robbery; and (3) a 2-level enhancement for obstruction of justice (asking one woman to give false testimony on his behalf and asking a man to contact another woman and have her destroy evidence on Baker's behalf). Importantly, all three of these enhancements were based on charges to which Baker pled guilty. In other words, by pleading guilty to the charges against him, Baker essentially admitted the facts underlying the charges, and those admitted facts were what the district court based the three enhancements on.[2]

The only other enhancement applied by the district court was the armed career criminal enhancement pursuant to U.S.S.G. § 4B1.4(b)(3)(B). Although Baker makes fleeting references to this enhancement in his appellate brief, it is unclear precisely what his challenge is to the enhancement. To the extent he is arguing that Booker requires a jury, rather than a judge, to determine whether a particular prior offense qualifies as a "violent felony" for purposes of that enhancement, we have already rejected such

---

[2] Baker did not object below to any of these enhancements.

argument.  See United States v. Brothers, 438 F.3d 1068, 1074 (10th Cir. 2006).  Further,

Baker does not argue, nor does the record indicate, that the district court erroneously

concluded that his prior offenses qualified as "violent felonies" for purposes of the armed

career criminal enhancement.[3]

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

---

[3] The armed career criminal enhancement was based on Baker's convictions, in May 1977, of robbery with firearms, second degree burglary, and second degree rape.