*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HAYES BACALL,

Defendant-Appellant.

FOR PUBLICATION
April 14, 2025
10:39 AM

No. 369227
Oakland Circuit Court
LC No. 2010-233054-FC

Before: GARRETT, P.J., and K. F. KELLY and SWARTZLE, JJ.

SWARTZLE, J.

Defendant was convicted of first-degree murder and carrying a firearm during commission of a felony. After two witnesses recanted their testimony, and because of prosecutorial misconduct during trial and indications that the jury struggled with the verdict, the Oakland County Conviction Integrity Unit (CIU) recommended that the conviction be vacated in exchange for a guilty plea to second-degree murder. Defendant moved for relief from judgment, and the trial court denied defendant's motion. Defendant and the prosecutor jointly moved for reconsideration, which the trial court denied. We reverse the trial court's order and remand for further proceedings.

## I. BACKGROUND

In defendant's prior appeal to this Court, we explained:

On July 2, 2010, police received a call about gunshots being fired at a BP gas station owned by the victim. The responding officer found defendant pacing outside, talking on his cell phone, carrying a holstered gun. The officer asked what had happened, and defendant replied that he killed his nephew because the nephew owed him $400,000. Other evidence demonstrating that defendant killed the victim, including eyewitness testimony, was admitted at trial. At trial, the defense contended that defendant killed [the victim] in self-defense. [*People v Bacall*, unpublished per curiam opinion of the Court of Appeals, issued March 5, 2013 (Docket No. 306269), p 1.]

-1-

The only eyewitness testimony at trial came from Slieman Bashi, who had known the victim and defendant for over 20 years and considered the victim to be his "very closest friend." Bashi testified that, on the day of the incident, he and the victim were sitting in the victim's office when defendant entered and began complaining about money. When the victim told defendant not to yell and attempted to stand up, defendant shot the victim. Bashi testified that the victim did not argue with defendant, reach for a gun, or touch defendant before he was shot.

Defendant testified at trial. He asserted that the victim "would lose control of his patience fast." Defendant explained that he had seen the victim pull out a weapon on people before. According to defendant, the victim owed defendant money, and defendant was calling the victim often about the debt. The victim was "tough" with defendant.

On the day of the shooting, defendant tried to call the victim "about 10 times" before arriving at the victim's office. After defendant entered the victim's office, the victim "jumped" up, his "eyes opened up," and "his face started changing." Defendant became "very scared" and tried to leave, but there was no room to open the office door. Defendant pulled out his gun because he "wanted to make sure that [he] would be able to leave" and that the victim would not get to him first. Defendant knew that the victim had "a lot of weapons in the office."

The victim purportedly responded to defendant, "[Y]ou're pulling your weapon on me, I'll, I'll put it in your ass," and then he tried to jump on defendant and take defendant's gun. Defendant began to shoot because he thought that the victim was going to kill him. Defendant knew that the victim had pulled out guns on people before, for no reason, and wondered what the victim would do to a person to whom he owed $400,000. The victim attempted to move toward his cabinet, and defendant continued shooting.

On cross-examination, the prosecutor asked defendant about failing to disclose a prior conviction of unlawful discharge of a firearm on his Michigan application for a concealed carry permit. Defense counsel objected, and the trial court sustained the objection.

Samir Bacall, the victim's younger brother, testified that the victim was his "best friend." Samir stated that defendant called him multiple times in the months before the shooting, saying that he was going to kill the victim because of the money that the victim owed defendant. Samir estimated that defendant mentioned harming the victim "[a]bout 10 to 15 times" between January and July 2010 and sometimes mentioned killing the victim's son to make the victim suffer. On cross-examination, Samir stated that he blamed defendant for the victim's death and confirmed that the victim carried a gun.

In closing, the prosecutor asserted that defendant changed his name and applied for a Michigan concealed pistol license, but failed to report that he had an unlawful-discharge conviction. Defense counsel again objected, reminding the trial court that it had previously sustained an objection on this issue, so there was no testimony on the matter. The trial court overruled the objection on the basis that it was closing argument. The prosecutor resumed closing and asserted that the first time that the defendant claimed self-defense was during trial, but the eyewitness testified that the victim did not touch defendant or threaten him.

After the jury was excused, defense counsel argued that the prosecutor's statement that defendant first claimed self-defense only during trial violated defendant's right to remain silent, but was also untrue. Defense counsel requested a mistrial because the prosecutor knew "that there were several taped conversations from the jail that [the prosecutor] chose not to put into evidence" during which defendant repeatedly stated that he had acted in self-defense. If the trial court would not grant the mistrial, then defense counsel requested that the trial court "correct the statement." The prosecutor responded that he was basing his argument on defendant not telling the police that he acted in self-defense. The trial court denied defendant's motion, explaining that the prosecutor's argument about self-defense "was a fair perception of the facts and testimony," and it had instructed the jury that the lawyers' arguments were not evidence.

Defense counsel also raised the issue of the prosecutor arguing that defendant lied on his concealed-carry application after the trial court had previously sustained defense counsel's objection to questioning on that issue. Defense counsel requested that the trial court instruct the jury to disregard the statement or enter a mistrial. The trial court again found that the prosecutor's statement "was a fair commentary on the evidence."

During deliberations, the jury sent the trial court a note asking if the jury could return "a verdict of a lesser cause when they [were] unanimous even though some may feel a stronger verdict is what they believe[d]." Defense counsel asked the trial court to "answer their question just positively yes, specifically, because that is the question." The trial court suggested reading M Crim JI 3.11, and defense counsel objected to a portion of it because it would be "directing a verdict" by telling the jury to first consider first-degree murder when the jury had already decided not to convict of first-degree murder or was deliberating between first-degree murder and second-degree murder or second-degree murder and manslaughter. The trial court then read a revised version of M Crim JI 3.11 to the jury. The jury found defendant guilty of first-degree premeditated murder, with the foreperson stating that "this was not an easy decision."

On direct appeal to this Court, defendant argued, in part, that his right against double jeopardy was violated when the jury was instructed to continue deliberations after sending out its note, and that several statements made by the prosecutor during closing arguments amounted to prosecutorial misconduct. *Bacall*, unpub op at 1, 3. This Court held that the trial court properly determined that the jury had not reached a unanimous verdict when the jury did not check the box for second-degree murder on the verdict form and because the note "stated that some jurors felt that a stronger verdict *was appropriate*, but did not indicate it was deadlocked on first degree murder." *Id*. at 3. Further, comments that the prosecutor made about defendant's concealed-carry-permit application did not deny defendant a fair and impartial trial because the jury instructions explained that the prosecutor's arguments were not evidence. *Id*. at 4. The prosecutor's assertion that defendant never claimed self-defense before trial, however, was "clearly false" and "highly inappropriate," constituting misconduct for which the trial court should have provided curative instructions when so requested. *Id*. at 5. This Court concluded, however, that, considering "the overwhelming evidence which includes the testimony of an eyewitness to the shooting, defendant's statements to the police and a videotape of some of the events themselves, we conclude that the prosecutor's improper statement did not deny defendant a fair trial." *Id*.

Defendant sought a writ of habeas corpus from the U.S. District Court for the Eastern District of Michigan. The district court denied defendant's petition, but found that rational jurists

could debate its resolution regarding defendant's claims on the basis of the prosecutor's statements. *Bacall v Stoddard*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued November 4, 2016 (No. 2:14-cv-13442), p 14. The U.S. Court of Appeals for the Sixth Circuit affirmed the district court's judgment, but it noted that the prosecutor's statement about defendant only first claiming self-defense at trial was false and that the "prosecutor's resurrection of the excluded concealed-carry-permit issue was also inappropriate." *Bacall v Stoddard*, 716 F Appx 502, 509-510 (CA 6, 2017). The Sixth Circuit stated that if the case were in front of it on direct review, the court "might find that a new trial was necessary." *Id*. at 510.

The CIU of the Oakland County Prosecutor's Office began an investigation into this case after being informed that both Bashi and Samir had recanted their trial testimony. Both witnesses were interviewed. Bashi told the CIU that when defendant entered the office during the incident, the victim stood up, and defendant and the victim began yelling at each other. The victim told defendant that he was going to "stick a gun up [defendant's] ass." The victim lunged at defendant and then defendant began shooting. Bashi had not spoken with defendant and nobody came to Bashi about giving a new statement. Bashi had been closer to the victim than he was with defendant. For his part, Samir told the CIU that, after the shooting, he had been very upset about his brother's death and embellished his statements because he was upset. Samir had not been honest when he said that defendant threatened to kill the victim and his son. Samir was "coming forward now" because defendant was "a good man," and Samir felt guilty about his previous statements.

Defendant moved for relief from judgment. The trial court denied the motion, finding that defendant failed to address the "good cause" or "actual prejudice" requirements under MCR 6.508(D)(3). Defendant subsequently moved jointly with the Oakland County Prosecutor's Office for reconsideration of the trial court's order, providing exhibits that included the CIU report, affidavits from Bashi and Samir, and transcripts of their CIU interviews. The CIU report explained how the CIU found that, when considering the recantations along with the prosecutor's statements about self-defense and the indication that the jury struggled with the verdict, a different result would be probable on retrial. The CIU recommended that the prosecutor vacate defendant's conviction and sentence in exchange for a guilty plea to second-degree murder.

In his affidavit, Bashi explained that, after grieving for over 12 years, he realized that his testimony about the victim's actions "was not accurate or truthful." At the time of trial, Bashi had been "very distraught and depressed about witnessing the shooting and the killing of [his] very good friend who was inches away from [him] at that time." Bashi stated that he was not being promised anything or threatened to change his testimony. Samir explained in his affidavit that he regretted his false statements about defendant threatening the victim and his son. Samir had "deeply loved and looked up to" the victim. Samir had been mourning and wanted defendant "to pay" when he testified at trial.

During a hearing on the joint motion, defense counsel argued that, had the prosecutor raised the self-defense claim before rebuttal, the defense could have admitted the taped conversations in which defendant claimed self-defense. The trial court stated that this Court had already addressed that claim, finding harmless error, binding the trial court to that holding.

The trial court thoroughly reviewed the case, including watching the trial video. The trial court found that defendant had demonstrated, under *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003), that the recanted testimony was newly discovered, the newly discovered evidence was not cumulative, and defendant could not have discovered it and produced it at trial. Accordingly, the trial court focused on whether the new evidence would make a different result probable on retrial.

Regarding Bashi, the trial court found that a reasonable juror could not find that Bashi's recantation testimony was credible when he did not credibly explain why he was recanting, while his accounts of the shooting were consistent on the day of the shooting and at trial. Further, Bashi did not claim to have intentionally lied to the police or at trial, and his proposed new testimony was not consistent with defendant's testimony that the victim tried to go to his cabinet.

The trial court found that Samir's recantation testimony could be credible because he gave a plausible reason for recanting his testimony, including that he lied to the police to get revenge on defendant for killing his brother. Samir's proposed new testimony also did not contradict any facts established at trial. The trial court did not find, however, that the testimony would make a new result probable on retrial because the jury would be presented with "overwhelming evidence of premeditation even considering Samir Bacall's recantation." Accordingly, the trial court denied the joint motion for reconsideration.

Defendant now appeals, and the prosecutor joins defendant's request for relief.

## II. ANALYSIS

Defendant argues that the trial court erred by denying his motions for relief from judgment and reconsideration. The prosecutor agrees and asks this Court to vacate defendant's first-degree murder conviction and direct entry of a conviction of second-degree murder.

### A. STANDARD OF REVIEW

To begin, the trial court treated the parties' joint motion for reconsideration as an original motion for relief from judgment. Neither party has taken issue with this on appeal, and so we will review the trial court's decision as a denial of a motion for relief from judgment under MCR 6.502, rather than as a motion for reconsideration.

We review for an abuse of discretion a trial court's decision on a motion for relief from judgment. *People v Swain*, 288 Mich App 609, 628; 794 NW2d 92 (2010). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We also review for clear error the trial court's findings of facts supporting its decision. *Swain*, 288 Mich App at 628. Clear error exists if this Court is left with a definite and firm conviction that the trial court made a mistake. *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018). "The interpretation of a court rule is a question of law that is reviewed de novo." *Swain*, 288 Mich App at 629.

### B. DEFENDANT IS ENTITLED TO A NEW TRIAL

Motions for relief from judgment are governed by MCR 6.500 *et seq*. A "defendant has the burden of establishing entitlement to the relief requested." MCR 6.508(D). Relief is not proper if a defendant "alleges grounds for relief that could have been previously raised, unless the defendant demonstrates both good cause for failing to raise such grounds earlier as well as actual prejudice." *Johnson*, 502 Mich at 565. See MCR 6.508(D)(3).

For a trial court to grant a new trial on the basis of newly discovered evidence, the defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692 (cleaned up). Although the discovery that trial testimony was perjured may support the grant of a new trial, this Court is not generally "impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial." *People v Rogers*, 335 Mich App 172, 197; 966 NW2d 181 (2020) (cleaned up). Here, the trial court found that defendant met the first three *Cress* factors, and, on review of the record, we discern no abuse of discretion regarding this finding.

Accordingly, the primary issue before this Court is whether "the new evidence makes a different result probable on retrial." *Cress*, 468 Mich at 692. To make this determination, "a trial court must first determine whether the evidence is credible" by considering all relevant factors that bolster or diminish the veracity of a witness's testimony. *Johnson*, 502 Mich at 566-567. A trial court's role, however, is limited in reviewing newly discovered evidence because the trial court is not the ultimate fact-finder. *Id*. at 567. Accordingly, the trial court must determine whether a reasonable juror could find that the new testimony was credible on retrial. *Id*. When no reasonable juror could find that the witness was credible, "then the trial court should deny a defendant's motion for relief from judgment." *Id*. at 568. If the "witness is not patently incredible," however, the trial court must make its credibility determination on the basis of what a reasonable juror would find, rather than what the trial court itself would find. *Id*.

In this case, the trial court, without holding an evidentiary hearing, concluded that a reasonable juror could not find that Bashi's new testimony was credible because of its inconsistency with defendant's trial testimony and the lack of explanation for recanting his prior testimony. But see *People v Hammock*, 506 Mich 870; 946 NW2d 546, 546-547 (2020) (CAVANAGH, J., concurring) (agreeing that an evidentiary hearing was appropriate on a claim of newly discovered evidence when the "defendant's offer of proof identifie[d] evidence that, if believed, would raise serious concerns about his conviction"). The trial court did find, however, that Samir's recantation testimony was credible, although it determined that a different result was not probable on retrial because of the "overwhelming evidence of premeditation."

Once the trial court concluded that a reasonable juror could find that Samir's recantation testimony was credible, the trial court was required to consider all of the evidence that would be admitted at a new trial to determine whether a different result would be probable. See *Johnson*, 502 Mich at 571; *Rogers*, 335 Mich App at 201. As this Court explained in *Rogers*, "[W]hen evaluating a motion for new trial based on newly discovered evidence, the court must consider the evidence admitted at the original trial and *all* of the *record* evidence that has come to light to-date that could be used at the retrial." *Rogers*, 335 Mich App at 202. This record evidence that has come to light would include Bashi's recantation, even if the trial court was correct that his

testimony was not alone sufficient to make a different result probable on retrial. Thus, during a new trial, Samir would not testify that defendant threatened the victim and his son in the months leading up to the shooting, while Bashi would testify that the victim lunged at defendant before defendant shot him. The trial court did not make clear in its opinion that, once it had concluded that a reasonable juror could find Samir's recantation credible, it must then consider the likely effect of *both* recantations on a reasonable juror.

Moreover, the trial court did not address the recantation evidence within the context of the prosecutorial misconduct[1] that occurred in defendant's original trial. A court may not grant relief if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter." MCR 6.508(D)(2). This Court has already addressed the prosecutorial misconduct claims. *Bacall*, unpub op at 4-5. Courts are not, however, "precluded from considering previously decided claims in the context of a new claim for relief, such as in determining whether new evidence would make a different result probable on retrial." MCR 6.508(D)(2). Here, the trial court specifically noted that this Court had already addressed the self-defense issue, but it would have been appropriate for the trial court to consider those improper remarks when determining whether the new testimony of Samir and Bashi would make a different result probable on retrial.

On direct appeal, this Court found that the prosecutor's statement that defendant never made claims of self-defense before trial was misconduct, but concluded that defendant was not denied a fair trial considering the "overwhelming evidence." *Bacall*, unpub op at 5. But Bashi's and Samir's testimonies composed much of the evidence of premeditation. And even without the newly discovered evidence, the Sixth Circuit explained that the mention of the excluded concealed-carry permit "could seriously damage a jury's willingness to believe the permit holder's claim of self-defense" and noted that, if it were directly reviewing the case, the court "might find that a new trial was necessary." *Bacall*, 716 F Appx at 510. At a new trial, the prosecutor would avoid these plainly improper remarks, and there would be more evidence of self-defense than was presented at the original trial. Finally, the jury question indicated that the jury was struggling to arrive at a decision, and this was confirmed by the foreperson, who said that the jury's decision was not an "easy" one. Taken together, a different result on retrial is probable, and the trial court abused its discretion in concluding otherwise.

## C. REMEDY

The prosecutor agrees with defendant that the premeditation element of defendant's conviction is no longer sustainable, and the prosecutor stipulates to vacating defendant's first-degree murder conviction to enter a judgment of conviction of second-degree murder. Defendant responds that, under MCR 6.508(A), "the court may proceed in any lawful manner." Although the Court appreciates the prosecutor's position, the proper remedy is a remand for a new trial. Our

---

[1] "Although 'prosecutorial misconduct' is a commonly accepted term of art in criminal appeals, it is a misnomer when referring to allegations that do not involve violations of the rules of professional conduct or illegal activity. Less egregious conduct involving inadvertent or technical error [] should be deemed 'prosecutorial error.' " *People v Thurmond*, ___ Mich App ___, ___ n 6; ___ NW3d ___ (2023) (Docket No. 361302); slip op at 9 (citation omitted).

caselaw provides that when a trial court grants a motion for relief from judgment on the basis of newly discovered evidence, retrial, rather than dismissal, is the appropriate remedy. "[S]hould a trial court grant a motion for relief from judgment, the case would be remanded for *retrial*, not dismissal." *Johnson*, 502 Mich at 567. See also *id*. at 579; *Rogers*, 335 Mich App at 209.

The prosecutor relies on *People v Williams*, 475 Mich 101; 715 NW2d 24 (2006), as authority for this Court to vacate a conviction and direct the entry of a lesser offense. In *Williams*, 475 Mich at 103, our Supreme Court explained that "to avoid double-jeopardy implications, the defendant receives one conviction of first-degree murder, supported by two theories, and the conviction of the predicate felony underlying the felony murder is vacated." *Id*. If the defendant's first-degree murder conviction was "reversed on grounds only affecting the murder element," then an appellate court could direct entry of the underlying felony. *Id*. at 104-105. Accordingly, we recognize that there are certainly cases in which appellate courts "may direct the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v United States*, 517 US 292, 306; 116 S Ct 1241; 134 L Ed 2d 419 (1996). See also *People v Bearss*, 463 Mich 623, 631; 625 NW2d 10 (2001); *People v Thomas*, 399 Mich 826, 826; 249 NW2d 867 (1977).

This is not, however, one of those cases. If a jury believes that defendant acted in self-defense, then defendant's actions would be justified and he could be acquitted, not convicted, of second-degree murder. See *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). Further, the record does not demonstrate whether the jury sent its note due to being unanimous on the lesser charge of second-degree murder or manslaughter. In any event, as defendant aptly observes, "a different result on retrial would be more than probable, it would be almost certain."

## III. CONCLUSION

After a jury convicted defendant of first-degree murder, two key witnesses recanted. In denying defendant a new trial, the trial court erred by not considering the impact that both witnesses' recantations would likely have on retrial, especially within the context of a retrial not tainted by the prosecutor's misconduct from the first trial. The trial court abused its discretion in denying defendant's motion for a new trial, and, as a result, we reverse and remand for further proceedings consistent with this opinion.

Reversed. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly

-8-