**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0007n.06
Filed: January 7, 2008

06-2016

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARCO ANTONIO GARCIA, | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY and COOK, Circuit Judges; VINSON,[*] District Judge.

PER CURIAM.   The defendant, Marco Garcia, was convicted of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); engaging in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848; and conspiracy to launder money, in violation of various sections of 18 U.S.C. § 1956.   At sentencing, the district judge recognized that the marijuana conspiracy was a lesser-included offense of the CCE charge and, therefore, held the sentence on this conviction "in abeyance," and sentenced the defendant to 240 months on each of the other two convictions, to be served concurrently. The defendant now appeals both his convictions and his sentence on the grounds that (1) the money-laundering conspiracy is also a lesser included offense of the CCE charge, (2)

---

[*]The Hon. C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

the CCE charge should not have been submitted to the jury, (3) the CCE jury instruction was improper, and (4) the district court committed various trial errors that together constituted cumulative error affecting his substantial rights. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The indictment in this case alleged that Marco Garcia and several of his family members, including his mother, Sandra Riojas Garcia, his father, Antonio Garcia, his brother, Victor Garcia, his sister, Paty Garcia, another sister, Sandra Garcia Leal, and his brother-in-law, Jose Juan Ramses Garcia, were all involved in a drug operation in which they imported large quantities of marijuana from Miguel Aleman, Mexico, to Roma, Texas, and then transported it to Lansing, Michigan, where they sold it to street dealers. The investigation into the Garcia family's drug operation became known to the family sometime in October 1994, when law enforcement executed search warrants at some of their residences. In December 1994, arrest warrants were issued for all of the indicted defendants and, that same month, Marco's mother, father, and sister Paty were arrested. They were tried and convicted in 1995.

Between the time the search warrants were executed and the arrest warrants were issued, Marco and his brother Victor had traveled to Miguel Aleman, where they heard about their parents' and sister Paty's arrests. As a result, they resided in Mexico from that time on. Marco's sister Sandra and her husband, Jose, were in the United States when

they heard about the arrests, and they immediately fled to Miguel Aleman to join the Garcia brothers. Marco, Victor, Sandra and Jose continued to live in Miguel Aleman from 1994 to 2005. In February of that year, Sandra and Victor were extradited from Mexico to face charges in Michigan. Both entered guilty pleas to the drug and money-laundering conspiracy counts. Later in 2005, Marco was extradited and went to trial.

Marco's trial was lengthy, with 34 witnesses and over 500 exhibits. Among the witnesses were his three siblings, Sandra, Victor, and Paty, all three of whom described how the Garcia family's drug operation worked and Marco's leadership role in it. The supplier of marijuana in Mexico was a man named Sergio Flores. Marco and his brother-in-law Jose were the only two members of the family to deal with Sergio Flores directly. Once Marco or Jose obtained the marijuana from Sergio and brought it into Roma, Texas, various family members arranged for the drugs to be transported to Lansing, Michigan, where other family members would arrange for it to be unpacked and sold. Payment for the drugs often would be wired from Lansing to Roma via Western Union, and Garcia family members sometimes paid third parties to make the Western Union transactions in order to avoid having the Garcia name associated with large amounts of money. Marco took part in all aspects of the business, including arranging for vehicles and drivers to transport the drugs, arranging for storage of the marijuana in Lansing, speaking with the family's main buyer in Lansing, and receiving drug money via Western Union.

As noted above, Marco was convicted by a jury of conspiracy to distribute marijuana, engaging in a continuing criminal enterprise, and conspiracy to commit money-laundering. At sentencing, the district court recognized that under *Rutledge v. United States*, 517 U.S. 292, 297 (1996), the marijuana conspiracy was a lesser included offense of the CCE charge. Although the judge initially intended to vacate the conviction on the marijuana-conspiracy count, at the request of the U.S. Attorney's Office, he ordered that sentencing for that conviction be held "in abeyance unless the conviction and sentencing on [the other two convictions] are overturned." The court then sentenced the defendant to 240 months on each of the other convictions, to be served concurrently.

## DISCUSSION

### 1. The Money-Laundering Conspiracy Conviction

The defendant contends that the district court should also have held that conspiracy to commit money laundering is either a lesser-included offense, or is factually indistinguishable from, the charge of engaging in a continuing criminal enterprise and, therefore, that one of those two counts should have been vacated. Because the defendant failed to raise this issue in the district court, pursuant to Federal Rule of Criminal Procedure 52(b) we may review this issue for only plain error. We conclude that under the long-standing *Blockburger* test, the two counts constitute separate offenses.

- 4 -

In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court announced the rule for determining whether two statutory provisions define only one crime, so that conviction under both provisions would violate the Double Jeopardy Clause of the Fifth Amendment: "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."   In the case of a conspiracy count and a CCE count, the pertinent question thus becomes "whether the . . . conspiracy offense requires proof of any element that is not part of the CCE offense."  *Rutledge*, 517 U.S. at 298 (citing *Blockburger*, 284 U.S. at 304).

To establish that a defendant has engaged in a continuing criminal enterprise in violation of 21 U.S.C. § 848, the government must prove:

> (1) that the defendant committed a felony violation of federal narcotics laws [21 U.S.C. §§ 801 *et. seq.*]; (2) that the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) that the defendant committed the series of offenses in concert with five or more persons; (4) that the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons, and (5) that the defendant obtained substantial income and resources from this series of violations.

*United States v. Avery*, 128 F.3d 966, 973 (6th Cir. 1997).  To establish conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, "the government must prove that the conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined in it."  *Id.*, at 970 (internal quotations marks and citation omitted).  Because conspiracy to distribute marijuana is a felony drug offense under 21

U.S.C. § 846, proof of all three of the elements of such a conspiracy establishes the first element of a CCE count, and the offense is completely subsumed within the definition of CCE as a lesser-included offense. In other words, the drug-trafficking conspiracy count does not require proof of any element that is not part of the CCE count.

It is a different situation, however, when, as in this case, the conspiracy charge at issue is not itself a felony violation of the federal narcotics laws. *Cf. Avery*, 128 F.3d at 970, 972 (vacating § 846 drug conspiracy as lesser included offense of CCE charge but letting stand Avery's conviction for money-laundering conspiracy under 18 U.S.C. § 371). In order to convict a defendant of conspiracy to launder money under 18 U.S.C. § 1956, the government must prove: (1) that two or more persons conspired to commit the crime of money laundering, and (2) that the defendant knowingly and voluntarily joined the conspiracy. *See* Sixth Circuit Pattern Jury Instructions - 3.01A; *Whitfield v. United States*, 543 U.S. 209, 212 (2005) (§ 1956 conspiracy does not require proof of an overt act). Unlike a drug conspiracy, proof of these two elements of a money-laundering conspiracy does not have any relation to the first element of CCE. Moreover, although some of the same evidence may be relevant in establishing both a money laundering conspiracy and the last element of CCE, to the extent that the evidence establishes that the defendant obtained substantial income and resources from violation of the drug laws, this last element clearly does not require that the elements of a money-laundering conspiracy be proven. Indeed, the final element of CCE does not require that the profits be laundered at all, let alone that the defendant take part in a conspiracy to do so. *See United States*

*v. DeCarlo*, 434 F.3d 447, 455-56 (6th Cir. 2006) ("The Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation if discrete elements must be proved in order to make out a violation of each statute"). Because conspiracy to commit money-laundering requires proof of elements that are not required to prove CCE and, thus, is not a lesser-included offense of CCE, there was no double jeopardy violation in Garcia's convictions for both offenses.

**2. Jury Consideration of CCE Count**

The defendant contends that it was error for the district court to submit the CCE count to the jury because "there was no evidence as to any substantial sums of money being paid to Marco Garcia," as required by the fifth element of CCE. That element of the offense requires proof that the defendant obtained substantial income and resources from the series of narcotics violations. Because the defendant failed to raise this issue in district court, under Federal Rule of Criminal Procedure 52(b), we review this issue only for plain error and find none.

To establish the fifth element of CCE, it is sufficient for the government to show that the defendant obtained gross income of a considerable amount; the government need not show that the defendant made an actual net profit. *See United States v. Jeffers*, 532 F.2d 1101, 1116-17 (6th Cir. 1976), *reversed on other grounds*, 432 U.S. 137 (1977). At trial, a number of witnesses testified that Marco Garcia was one of the heads of the drug distribution business and that substantial amounts of money were exchanged, often via

Western Union, in relation to various aspects of the operation. Additionally, several witnesses testified specifically about money paid to Marco in relation to the sale of marijuana. The jury could certainly conclude from this evidence that the fifth element of CCE was met.

### 3. Jury Instruction on CCE

The defendant next complains that the district court erred in failing to submit special interrogatories to the jury regarding the second and third elements of CCE, requiring that the government establish a series of three or more drug offenses and five or more people with whom the defendant committed drug-trafficking. In support of this contention, the defendant cites *Richardson v. United States*, 526 U.S. 813 (1999). Because he failed to raise this issue in the district court, pursuant to Rule 52(b), we review it only for plain error and, once again, find none.

In *Richardson*, the Supreme Court held that in determining guilt on a CCE charge, the jury must unanimously agree on which three violations make up the continuing series of three or more drug offenses. However, nothing in the opinion requires that the jury be given a special interrogatory on the issue. *See Richardson*, 526 U.S. at 824. The *Richardson* Court did not reach the issue of unanimity on proof of the number of people with whom the defendant committed the violations, assuming without deciding that unanimity was not required on this aspect of the crime. *See id.* The Court did note, however, that the five person requirement was "significantly different from the [series]

provision . . . in respect to language, breadth, tradition, and other factors we have discussed." *Id.* Indeed, the Court's analysis hinged largely on the statutory language describing the predicate series of drug offenses as "violations," language that is not present with respect to the five-person requirement. *See id.* at 818. In his dissent, Justice Kennedy noted that "[w]ith respect to the requirement of action in concert with five or more other persons, every Court of Appeals to have considered the issue has concluded that the element aims the statute at enterprises of a certain size, so the identity of the individual supervisees is irrelevant." *Id.* at 829 (Kennedy, J. dissenting). At least one court of appeals has confirmed, post-*Richardson*, that the jury need not be unanimous regarding the identity of the five persons. *See United States v. Stitt*, 250 F.3d 878, 885-887 (4th Cir. 2001) (holding that the jury need not unanimously agree on the five persons requirement of CCE and likening the requirement to unnamed co-conspirators under the law of conspiracy), *sentence reversed on post-conviction relief*, 475 F.Supp.2d 571 (E.D. Va. 2007).

In this case, the jury was instructed in conformity with *Richardson*. In the jury charge the court stated:

> The defendant is charged in Count 3 of the indictment with conducting a continuing criminal enterprise in violation of federal law. It is a crime for anyone to engage in what is called a continuing criminal enterprise involving controlled substances. For you to find the defendant guilty of this crime, you must be convinced that the government has proven each of the following elements beyond a reasonable doubt:

First, that the defendant violated the Controlled Substances Act as charged in Count 1 or 2 of the indictment.

Second, that the violations were part of a continuing series of violations, which means at least three violations of the Controlled Substances Act. These violations must be connected together as a series of related or ongoing activities as distinguished from isolated and disconnected acts. *You must unanimously agree on which of these underlying violations has been proven.*

Third, that the defendant obtained substantial income or resources from the series of violations.

Fourth, that the defendant undertook such violations in concert with five or more persons with respect to whom the defendant occupied a position of organizer, supervisor, or manager. The five other persons need not have acted at the same time or in concert with each other. *You need not unanimously agree on the identity of any other persons acting in concert with the defendant as long as each of you finds that there was five or more such persons.* (Emphasis added)

As the italicized language indicates, the jury was given the unanimity instruction required by *Richardson* with regard to the series of drug violations. We conclude that the lack of a unanimity instruction with regard to the five-person requirement is simply not error under *Richardson* or under relevant circuit case law, and the defendant has failed to make a reasoned argument that would alter this conclusion.[1]

---

[1]Although the defendant did not request, and the jury was not given, any special interrogatories regarding the elements of CCE, and although nothing in *Richardson* indicates that any such interrogatory is necessary, at least one court of appeals has concluded that special interrogatories may be advisable in complex CCE cases. Here, however, the defendant has simply failed to show why this is such a case and, moreover, even if it were, the decision of "whether and how to utilize special interrogatories in such cases" is within "the broad discretion of the district court." *United States v. Ogando*, 968 F.2d 146, 148-49 (2nd Cir. 1992) (suggesting that notwithstanding the law's traditional distaste for special interrogatories, in complex CCE cases, as in complex RICO cases, courts may be well-advised to use special interrogatories, but concluding that such a decision is soundly within the discretion of the court); *see also United States v. Shrumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000). In reviewing the jury instructions in this case for plain error, we cannot fault the district court's failure to exercise its discretion to employ special interrogatories *sua sponte*.

### 4. Various Trial Errors

The defendant contends that an accumulation of errors at trial resulted in such serious prejudice that he was denied a fair hearing. We have reviewed each of these assignments of error and reach the opposite conclusion.

For example, the defendant now complains that he was forced to appear in prison garb in front of the jury. From the record, it appears that for the first three days of his trial, the defendant appeared in court in an outfit that was issued to him when he was incarcerated in Mexico, consisting of a khaki shirt and pants that looked much like a janitor's uniform. Because the outfit was not the customary orange jumpsuit issued in many jails in this country, apparently neither the court nor the attorneys realized that the defendant was in prison garb until, on the third day of trial, in the process of identifying the defendant for the record, a witness stated that it looked like Marco was wearing "federal inmate clothes." Neither the defendant nor his counsel had objected to his attire up to that point, nor did the attorney raise any objection in response to the witness's comment. Instead, it was the district judge, *sua sponte*, who soon thereafter raised the issue with counsel out of the presence of the jury and instructed the defendant's attorney that he could obtain funds to buy the defendant street clothing if he wished. The defendant was dressed in appropriate street clothing for the remainder of the trial.

We review this issue for plain error under the Supreme Court's analysis in *Estelle v. Williams*, 425 U.S. 501 (1976), in which the Court held that "the State cannot,

consistently with the Fourteenth Amendment, *compel* an accused to stand trial before a jury while dressed in identifiable prison clothes." 425 U.S. at 512 (emphasis added). The Court also held, however, that "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Id.* at 512-13. Here, it is uncontested that the defendant made no objection and, therefore, there is no constitutional violation.

Even less compelling is the defendant's argument that the district court erred in permitting the introduction, without objection, of the plea agreements of several of the prosecution's witnesses. The defendant argues that this was error because "such documents are filled with hearsay and irrelevant prejudicial information," including "particularly prejudicial . . . references ... that the witnesses are making 'deals for truthful testimony' which has a substantial vouching effect." However, we rejected this same argument in *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000).

The defendant further contends that the court's jury instruction on flight to avoid prosecution was not supported by the evidence at trial. However, the instruction was the result of an agreed compromise between defense counsel and the government. He also challenges as prejudicial the district court's mention of an earlier trial involving a number of the Garcia family members, but there is no developed argument or citation of case law in his appellate brief to support this contention. The district court allowed the introduction

of the defendant's tax returns for the years 1991 through 1993 and testimony that he had not filed tax returns from 1983 through 1990, all without objection. If the admission of this evidence violated Federal Rule of Evidence 404(b), as the defendant now belatedly argues, it was harmless error at most, given the overwhelming nature of the other evidence of the defendant's guilt. Finally, we note that the defendant's allegation of misconduct on the part of the government prosecutor is not sufficiently developed to permit review on appeal.

## CONCLUSION

For the reasons set out above, we AFFIRM both the defendant's convictions for engaging in a continuing criminal enterprise and conspiracy to commit money laundering and the sentencing order of the district court. However, the case must be REMANDED to the district court to permit the entry of an order vacating the defendant's conviction for conspiracy to distribute marijuana, which – as pointed out above – is subsumed within the CCE conviction. *See Rutledge*, 517 U.S. at 302, 305 (rejecting government's argument that the defendant's drug-conspiracy conviction should be allowed to stand as a "backup" in case his CCE conviction was later reversed and noting that the mere fact of a conviction has the potential for "adverse collateral consequences" beyond the actual sentence imposed for CCE); *see also DeCarlo*, 434 F.3d at 457 (concluding that conviction on the lesser-included offense must be vacated).